UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
MICHAEL KIMM,

                Plaintiff,                    **REPORT AND**
                                                        **RECOMMENDATION**
                                                        CV 15-0029 (SJF)(ARL)

       -against-

KYU SUNG CHO,

                Defendant.
--------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

      Plaintiff Michael Kimm ("Plaintiff") is an attorney who brings this action against his former client Kyu Sung Cho ("Defendant" or "Cho") to recover legal fees for services rendered. Before the Court are Defendant's motions (1) to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 19 for failure to join a necessary party; (2) to dismiss the complaint for failure to comply with New Jersey Rule 1:20A-6; and (3) for sanctions pursuant to Rule 11. Also before the Court is Plaintiff's motion for summary judgment pursuant to Rule 56, seeking fees in the amount of $191,502.50. For the reasons set forth below, the undersigned recommends that Defendant and Plaintiff's motions be denied in their entirety.

## BACKGROUND

**I.    Factual Background**

      The following facts are drawn from the pleadings, the parties' Local Rule 56.1 Statements, and the parties' papers submitted in support of or in opposition to the instant summary judgment motion. The facts cited are undisputed unless otherwise noted.

      Plaintiff is a lawyer licensed in New York and New Jersey and is a domiciliary of New Jersey. Compl. ¶ 1. Plaintiff maintains his principal place of business in Englewood Cliffs, NJ. *Id.* Defendant Cho is a resident and domiciliary of New York. *Id.* ¶ 2. It is undisputed that as presently constituted, the Court has diversity jurisdiction over this action.

Defendant Cho is the Chief Executive Officer of Dongbu Tour & Travel, Inc. ("Dongbu"), a New York corporation that maintains its corporate office in New Jersey. According to the complaint, in February 2012, Cho and Dongbu retained Plaintiff to provide legal services for a case in the United States District Court, District of New Jersey, in which Cho and Dongbu were named as defendants. Compl. ¶ 4. That case was a putative class action and collective action for wage and hour violations brought by several former and then-current employees of Dongbu who claimed they were not paid proper wages and benefits. *Id.* Plaintiff represented Cho and Dongbu in that action until November 2013, when the court granted Plaintiff's unopposed motion to withdraw. *Id.* ¶ 6. Cho, and presumably Dongbu, retained new counsel in December 2013. *Id.* ¶ 7.

Plaintiff brings this action against Defendant Cho to recover legal fees incurred as a result of Plaintiff's representation of Cho in the New Jersey lawsuit. The complaint asserts four causes of action: (1) breach of contract; (2) quantum meruit; (3) account stated; and (4) unjust enrichment. The contract at the crux of this litigation is a retainer agreement dated April 2, 2012. DE 28-4. The agreement lists Plaintiff as the lawyer and Cho and Dongbu as the clients. *Id.* The agreement is signed by Plaintiff only; Cho and Dongbu did not execute the agreement. *Id.*

Plaintiff first provided Cho with a copy of a proposed retainer agreement on April 3, 2012 by sending it to his personal email. DE 29-3 ¶ 3; DE 29-6 ¶ 3; DE 28-12 Ex. 5. On April 6, 2012, Cho requested another copy of the retainer, and Plaintiff emailed him another copy of the proposed retainer. DE 29-3 ¶ 3; DE 29-6 ¶ 3; DE 28-12 Ex. 6. According to Plaintiff, Cho

acknowledged receiving it and instructed Plaintiff to begin his defense.  DE 28-12 ¶ 8.  Defendant concedes that he retained Plaintiff with respect to the underlying wage and hour case.  DE 29-6 ¶ 2.

On April 6, 2012, Plaintiff filed various papers in the New Jersey action.  DE 28-12 ¶ 9.  The next day, according to Plaintiff, Plaintiff requested that Cho return a signed copy of the retainer agreement.  *Id.*  Plaintiff further claims that Cho brought his signature page to Plaintiff's office during one of his subsequent visits, and Plaintiff instructed his secretary to file it.  *Id.*  Plaintiff has been unable to locate Cho's signature page.  *Id.*

The retainer agreement provides that the clients will pay the sum of $3,000 per month for "general counsel services, including reviewing contract matters, operational matters, employment matters that do not involve litigation" and that Plaintiff will allocate up to 12 hours per month on such matters.  DE 28-12 Ex. 7 ¶ 3.A.  The agreement further provides that so long as this provision is "being honored," the clients would pay a discounted fee "equal to 70 percent of billed statements, as and when billed from time to time, as events warrant."  *Id.* Ex. 7 ¶ 3.B.  The agreement also provides that the clients will pay rolling monthly fees of $10,000 for litigation services.  *Id.*

Lastly, the agreement provides for hourly billing:  Plaintiff's hourly rate was $500; associates' rate was $175-$250.  *Id.* Ex. 7 ¶ 2.  According to Plaintiff, he ultimately billed all associate time at $250 per hour due to the alleged "level of difficulty and overall time and efforts expended for the clients."  DE 28-12 ¶ 10.

3

Plaintiff sent Cho billing statements in June 2012; September 2012; December 2012; March 2013; and June 2013. *Id.* ¶ 13 and Ex. 8. The total amount due after adding up all of these bills was $229,202.50. *Id.* According to Plaintiff, between May and December 2012, Cho and Dongbu made sporadic payments but failed to keep up with the rolling monthly retainers. DE 28-12 ¶¶ 11, 13. Although the $3,000 per month allocation was for non-litigation services, Plaintiff provided the clients with the benefit of applying all such payments as a credit to the litigation services provided. *Id.* ¶ 5.

Plaintiff withdrew from the wage and hour action by leave of court in November 2013. DE 29-3 ¶ 7; DE 29-6 ¶ 7. According to Plaintiff, on December 11, 2013, he met Defendant at a restaurant at which point Defendant acknowledged that he owed fees and was unable to pay them due to a revenue shortfall. DE 29-3 ¶ 9. Thereafter, on December 30, 2013, Plaintiff's assistant allegedly provided Cho and his staff with holiday chocolates and a separate envelope containing final billing. DE 28-12 ¶ 125. The parties did not communicate again for about another year. *Id.*

On December 27, 2014, Plaintiff sent Cho a letter indicating that after applying amounts paid by Cho for legal services rendered through June 2013, Cho currently owed Plaintiff $169,202.50. *Id.* ¶ 10; DE 28-12 Exs. 9, 93. The letter also provided Plaintiff with a notice of the right to seek arbitration and attached Plaintiff's billing statements. DE 28-12 Ex. 93. According to Plaintiff, these statements inadvertently omitted entries for some of the work he performed in the underlying wage and hour case. *Id.* ¶ 127. Specifically, Plaintiff omitted fees for the U.S. Supreme Court petition and related stay filings he filed in that action. *Id.* Plaintiff

4

claims he dedicated 40 hours of additional time on these tasks.  *Id.*  Thus, in addition to the amounts already billed ($169,202.50), Plaintiff claims that Cho owes him $20,000 (40 hours x $500), plus a $300 filing fee and a $2,000 petition/bookprinting fee, for a total outstanding balance of $191,502.50.  *Id.*  Plaintiff does not submit any supporting documentation with regard to this additional amount sought.

On January 5, 2015, Plaintiff filed this action to recover his legal fees.  According to Plaintiff, in February 2015, he received a phone call from a mutual friend Dr. Lee who advised him, *inter alia*, that he spoke to Cho who apologized for not paying Plaintiff's bills.  DE 28-12 ¶ 128.  On March 23, 2015, Plaintiff had dinner with Cho and Dr. Dong Lee, at which time Cho acknowledged owing the fees and stated that he had experienced cash flow problems.  *Id.* ¶ 129; DE 29-3 ¶ 11.

On July 13, 2015, Defendant filed a fully briefed motion to dismiss the complaint and for sanctions.  That same day, Plaintiff filed a fully briefed motion for summary judgment, seeking fees in the amount of $191,202.50.  By Order dated July 13, 2015, Judge Feuerstein referred the motions to the undersigned.

## DISCUSSION

### I. Defendant's Motion to Dismiss Under Rule 19

Defendant's first argument is that the Complaint should be dismissed based on Plaintiff's failure to join Dongbu as a necessary party under Rule 19.  Rule 19 provides, in pertinent part, as follows:

> (a) Persons Required to Be Joined if Feasible.

5

>  (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>>
>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>
>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>>
>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Ed. R. Civ. P. 9(a). If the court finds that a party is in fact necessary, "the court must order that the person be made a party." *Id.* 9(a)(2). If joinder of the necessary party is not feasible, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." *Id.* 9(b). The factors the court should consider include:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
>> (A) protective provisions in the judgment;
>> (B) shaping the relief; or
>> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.* 9(b)(1)-(4).

Defendant maintains that Dongbu is a necessary party because Plaintiff was retained by both Cho and Dongbu to work on the putative class action. Therefore, according to Defendant, Dongbu has a valid interest in the amount of the legal fee owed to Plaintiff. It is undisputed, however, that it is not feasible to join Dongbu because to do so would destroy diversity. Under 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." Here, Dongbu is a New York corporation that maintains its corporate office in New Jersey. Plaintiff is a citizen of New Jersey for diversity purposes. Defendant argues that the Court must dismiss this action under Rule 19 because Dongbu is a required party whose joinder would destroy diversity jurisdiction.

The Second Circuit has recognized that the district court should take a "flexible approach" to a Rule 19(b) analysis. *See CP Solutions PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 159 (2d Cir. 2009) (citing *Universal Reins. Co. v. St. Paul Fire & Marine Ins. Co.*, 312 F.3d 82, 87 (2d Cir. 2002) (noting "the flexible nature of [the] Rule 19(b) analysis") and *Jaser v. N.Y. Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d Cir. 1987) ("[A] court should take a flexible approach when deciding what parties need to be present for a just resolution of the suit.")). The Second Circuit has further counseled that "'very few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible.'" *Universal Reins.*, 312 F.3d at 87 (quoting *Jaser,* 815 F.2d at 242).

7

Rule 19 sets forth a two-part test for determining whether the court must dismiss an action for failure to join a party. Fed. R. Civ. P. 19; *see also Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000). First, the Court must determine whether the party qualifies as a required party under Rule 19(a). *See Viacom*, 212 F.3d at 724. If the Court finds that a party is not required under Rule 19(a), the Court need not decide whether the party's absence warrants dismissal under Rule 19(b). *Id.* However, if the Court makes a threshold determination that joinder of an absent party is required but not feasible, the Court then proceeds to the second step and determines whether the party is "indispensable." *Id.* at 725.

The Court begins its analysis with the preliminary question of whether Dongbu is a required party to this action under Rule 19(a). The parties do not dispute that Cho and Dongbu are jointly and severally liable for Plaintiff's legal fees.[1] It is well-settled that joint obligors to an agreement are generally not "indispensable" parties to a litigation under Rule 19(b). *See, e.g., Newman-Greene, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 838 (1989) ("[G]iven that all of the guarantors . . . are jointly and severally liable, it cannot be argued that [the absent guarantor] was indispensable to the suit."); *Universal Reins*, 312 F.3d at 87 ("We have held that Rule 19 does not mandate the joinder of joint obligors, because one of several joint obligors is not typically an indispensable party to an action against the others."); *Greenleaf v. Safeway Trails, Inc.*, 140 F.2d 889, 890 (2d Cir. 1944) ("[O]ne of several joint obligors is not an indispensable party to an action against the others."); *Giaguaro S.p.A. v. Amiglio*, 257 F. Supp. 2d 529, 541 (E.D.N.Y. 2003) ("[I]t is long established in the Second Circuit that a joint obligor is not an

---

[1] Although Defendant argues that he is not jointly and severally liable in the underlying wage and hour case, DE 29-6 ¶ 2, he does not contest that he is jointly and severally liable with Dongbu for Plaintiff's legal fees.

8

indispensable party to an action against one of the other obligors."). As the Second Circuit explained long ago:

> [T]he plaintiff, by his judgment against one of his joint debtors, gets the relief he is entitled to, and no injustice is done to that debtor, because he is only made to perform an obligation which he was legally bound to perform before. The absent joint obligors are not injured, because their rights are in no sense affected, and they remain liable to contribution to their coobligor who may pay the judgment by suit, as they would have been had he paid it without suit.

*Greenleaf*, 140 F.2d at 890 (citation and internal quotation marks omitted). Notwithstanding the above case law indicating that Dongbu is not a required party, Defendant argues that the Court must nonetheless proceed to analyze the four factors set forth in Rule 19(b) under the Second circuit's "flexible approach." Even assuming arguendo that Defendant is correct, the Court finds that application of the relevant factors leads to the conclusion that the action against Defendant should proceed.

The first two factors pertain to any prejudice which may ensue should a judgment be rendered in Dongbu's absence. This inquiry focuses on the Defendant who argues in favor of joinder, as opposed to Plaintiff who presumably would be willing to bear the prejudice. *See CP Solutions*, 553 F.3d at 159. Because Cho and Dongbu are jointly and severally liable to Plaintiff, "there is no concern" that Cho "will be forced to share 'sole responsibility for a liability'" that he shares with Dongbu, the absent party. *See Universal Reins*, 312 F.3d at 88 (quoting *Provident Tradesmen Bank 7 Trust Co. v. Patterson*, 390 U.S. 102, 110 (1968)). Moreover, there is no evidence that suggests that the interests of Cho – the CEO of Dongbu – and Dongbu are adverse. *See CP Solutions*, 553 F.3d at 160.

9

The third factor – whether a judgment in the person's absence would be adequate – weighs against dismissal as "complete relief is available from a remaining party," i.e., Cho. *Universal Reins.*, 312 F.3d at 88. "Indeed, dismissal of a claim for an inability to join additional parties is not warranted where complete relief is available from a remaining party. *Id.*

Lastly, the fourth factor is whether Plaintiff would have an adequate remedy if the court dismissed the suit. Although Plaintiff might be able to sue Cho together with Dongbu in state court, "that consideration is far outweighed by the unfairness to [Plaintiff] and the harm to judicial economy resulting from dismissal." *CP Solutions*, 553 F.3d at 161. "'[W]hen federal diversity jurisdiction will exist if nondiverse parties are dropped, the bare fact that a state court forum is available does not, by itself, make it appropriate to dismiss the federal action.'" *Id.* (quoting *Samaha v. Presbyterian Hosp. in City of N.Y.*, 757 F.2d 529, 531 (2d Cir. 1985) (per curiam)).

Accordingly, the Court finds that Dongbu is not an indispensable party. The Court therefore respectfully recommends that Defendant's motion to dismiss this action under Rule 19 be denied.

## II.   Defendant's Motion to Dismiss Pursuant to New Jersey Rule 1:20A-6

Arguing that New Jersey law governs this action, Defendant moves to dismiss the complaint for failure to comply with New Jersey Rule 1:20A-6. Rule 1:20A-6, entitled "Pre-action Notice to Client," provides, in pertinent part, as follows:

> No lawsuit to recover a fee may be filed until the expiration of the 30 day period herein giving Pre-action Notice to a client . . . . Pre-action Notice shall be given in writing, which shall be sent by certified mail and regular mail to the last known address of the client, or, alternatively, hand delivered to the client, and which shall contain the name, address and telephone

10

> number of the current secretary of the Fee Committee in a district where the lawyer maintains an office. If unknown, the appropriate Fee Committee secretary listed in the most current New Jersey Lawyers Diary and Manual shall be sufficient. The notice shall specifically advise the client of the right to request fee arbitration and that the client should immediately call the secretary to request appropriate forms; the notice shall also state that if the client does not promptly communicate with the Fee Committee secretary and file the approved form of request for fee arbitration within 30 days after receiving pre-action notice by the lawyer, the client shall lose the right to initiate fee arbitration. The attorney's complaint shall allege the giving of the notice required by this rule or it shall be dismissed.

New Jersey Rule 1:20A-6. In his unsworn affidavits,[2] Defendant contends that Plaintiff never served the Pre-Action Notice upon him prior to the initiation of this lawsuit and, therefore, the action must be dismissed. DE 28-1 ¶ 12; DE 29-8 ¶ 38. Although the Court cannot consider Defendant's unsworn assertions, the Court nonetheless considers whether New Jersey Rule 1:20A-6 applies to this action because on its face, the complaint – which fails to allege that Plaintiff provided Defendant with the requisite Pre-action Notice – does not comply with the New Jersey Rule.

Defendant's argument is premised upon the application of New Jersey law.[3] In response, Plaintiff's memorandum of law does not address Defendant's choice of law argument. Instead, in Plaintiff's declaration, he avers that he "provided Mr. Cho with . . . a notice of right to seek fee arbitration" on December 27, 2014, and he attaches a copy of this letter as exhibit 93 to his declaration, which indicates that the letter was delivered by hand in compliance with the rule. DE 28-12 ¶ 126. Defendant counters, *inter alia*, that he never received the notice, though again,

---

[2] As discussed *infra*, both of the affidavits submitted by Defendant are inadmissible.

[3] At least one court has held that the obligations imposed by N.J. Rule 1:20A-1 *et seq*. constitute substantive law which should be enforced by a federal court applying New Jersey law. *See Kelley Drye & Warren v. Murray Indus., Inc.*, 623 F. Supp. 522, 526 (D. N.J. 1985).

11

he does so in an unsworn affidavit. DE 29-8 ¶¶ 38-40. Regardless of whether or not Defendant received the notice, if New Jersey law applies, the complaint is deficient on its face for failure to allege that proper notice was provided. Thus, although Plaintiff did not brief this issue, the Court proceeds to analyze whether New Jersey law applies to this action.

When jurisdiction is grounded in diversity, federal courts look to the laws of the forum state to resolve issues regarding conflicts of law. *See AHW Inv. P'ship v. Citigroup, Inc.*, 806 F.3d 695, 699 (2d Cir. 2015). In New York, "the first inquiry in a case presenting a potential choice of law issue is whether there is an actual conflict of laws on the issues presented. If not, no choice of law analysis is necessary." *Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011). Here, the parties have not pointed to any rule in New York containing similar requirements as New Jersey Rule 1:20A-6, and the Court's own research has not revealed one. Given this conflict, the Court's choice-of-law analysis continues.

The retainer agreement at issue contains a choice of law clause which provides that "[t]his agreement will be deemed to have been made in New York and should be construed under New York substantive law." DE 28-4 ¶ 9. Defendant argues that the retainer agreement is not enforceable, however, because it is not signed by Defendant. Plaintiff counters that there has never been a dispute over the existence of the retainer agreement; Plaintiff emailed Cho proposed retainer agreements, and Plaintiff began work thereunder. DE 28-12 ¶ 9. Plaintiff further argues that enforceability of a contract is not expressly conditioned on the signature of the party against whom enforcement is sought, but he fails to cite to any relevant authority in support of

12

his position. Thus, before the Court can decide the validity of the choice-of-law clause, the Court must first determine whether the retainer agreement itself is enforceable.

In deciding this threshold issue, "[i]t would make little sense to resort to [New York] law simply because it was designated by [the retainer] in order to determine whether that very contract is even operative." *Pegasus Aviation IV, Inc. v. Aerolineas Austral Chili, S.A.*, No. 08 Civ. 11371, 2012 WL 967301, at *5 (S.D.N.Y. Mar. 20, 2012). Instead, "New York rules apply a 'center of gravity' or 'grouping of contacts' analysis when deciding which forum's law to apply to determine the validity of a contract." *Id.* (citing *Eagle Ins. Co. v. Singletary*, 717 N.Y.S.2d 351, 352-53 (2d Dep't 2000)); *see also Alderman v. Pan Am World Airways*, 169 F.3d 99, 103 (2d Cir. 1999) ("Under New York's choice-of-law rules, the interpretation and validity of a contract is governed by the law of the jurisdiction which is the 'center of gravity' of the transaction."). The Court need not perform this analysis, however, because New York and New Jersey law are similar in determining the validity of unsigned contracts. *See 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 124 (2d Cir. 2011) ("[A]n unsigned contract may be enforceable, provided there is objective evidence establishing that the parties intended to be bound.'") (quoting *Flores v. Lower E. Side Serv. Ctr., Inc.*, 4 N.Y.3d 363, 369 (2005)); *Rosenthal v. HDOX Bioinformatics, Inc.*, 2014 WL 7735885, at *6 (N.J. Super. Ct. App. Div. Feb. 3, 2015) ("While plaintiff need not have signed the Note, an enforceable contract requires agreement as to essential terms and the manifestation of an intent to be bound.") (citing *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992)).

13

In the instant case, Defendant admits that he retained Plaintiff. Moreover, Plaintiff was clearly the attorney of record for Defendant in the underlying wage and hour case for over 18 months. Thus, there appears to be clear evidence of an intent to be bound. Nonetheless, this issue necessarily requires examination of evidence outside the complaint and presents questions of fact which are not properly decided on a motion to dismiss.

Moreover, assuming the Court finds that the choice-of-law clause is enforceable, the Court would then have to determine whether New York, where Defendant resides, "has sufficient contacts with the transaction." *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000) ("Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction."). On the other hand, if the Court finds that the choice-of-law provision is not enforceable, the Court would then be required to determine which jurisdiction has the greatest interest in the litigation. *See Utica Mut. Ins. Co. v. Munich Reins. Am., Inc.*, 594 F. App'x 700, 702 (2d Cir. 2014) ("In the absence of a choice-of-law clause, New York's choice-of-law rules prescribe an 'interest analysis' in contract cases.") (citing *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 137 (2d Cir. 1991)). On the existing record, the Court is unable to conclude that New York has sufficient contacts to the contract or the greatest interest in the litigation such that the choice-of-law clause is enforceable. *See Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439, 444 (S.D.N.Y. 2011) (finding that choice-of-law determination was premature at the motion to dismiss stage) (collecting cases). Accordingly, the

Court respectfully recommends that Defendant's motion to dismiss for failure to comply with New Jersey Rule 1:20A-6 be denied.[4]

### III.     Defendant's Motion for Rule 11 Sanctions

Defendant moves for sanctions under Rule 11 based on Plaintiff's filing of an alleged frivolous complaint. Defendant admittedly did not comply with the safe harbor provision of Rule 11 which requires the moving party to serve a copy of the motion on opposing counsel at least twenty-one days before filing the motion with the court. Fed. R. Civ. P. 11(c)(2). When a movant fails to comply with the safe harbor provision, the district court may not grant the motion for sanctions. *See Star Mark Mgmt, Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012) ("The safe-harbor provision is a strict procedural requirement."). Accordingly, the Court respectfully recommends that Defendant's motion for sanctions pursuant to Rule 11 be denied.

### IV.     Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment in the amount of $191,202.50, representing the amount of money Plaintiff claims he is owed by Defendant for legal services rendered in the underlying wage and hour action. Plaintiff was counsel of record for Defendant in that action from March 23, 2012 to November 19, 2013. DE 28-12 ¶ 2. Plaintiff moves for summary judgment under all four causes of action asserted in the complaint, i.e., breach of contract,

---

[4] The Court notes that to the extent New Jersey law does govern the instant dispute, Plaintiff's failure to allege in the complaint that he provided Plaintiff with the requisite notice under New Jersey Rule 1:20A-6 is easily remedied via amendment of the pleadings, subject to leave to amend being granted by the Court.

15

quantum meruit, account stated, and unjust enrichment, and briefs his motion under New York law without ever addressing Defendant's arguments that New Jersey law applies.

As a preliminary matter, the Court must address Plaintiff's contention that Defendant's affidavits must be rejected because they are unsworn and do not comply with federal law. 28 U.S.C. § 1746 provides that an unsworn matter may be treated as sworn, provided that it is "prove[n] by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, *as true under penalty of perjury*, and dated, in substantially the . . . form" of the model declaration provided. 28 U.S.C. § 1746 (emphasis added). For those matters executed within the United States, the model declaration provides as follows: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)." *Id.* § 1746(2). Here, Defendants' affidavits are unsworn. The last paragraph of each affidavit provides as follows: "I certify that the foregoing statements made by me are true. I am aware that if any of the statements made by me are willfully false, I am subject to punishment by the Court." DE 28-1; DE 29-8. The Second Circuit has expressly held that such language does not comport with the requirements of section 1746. *See In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 488 (2d Cir. 2013) ("The substitution of 'subject to punishment' for 'under penalty of perjury' is a substantial departure from the substance of the declaration provided in § 1746, and thus, does not comply with the statute."). Accordingly, the Court cannot consider Defendant's affidavits for the truth of the matters asserted.

Even though the Court must disregard Defendant's affidavits, the Court nonetheless finds that there are genuine issues of material fact precluding summary judgment at this time. First, as

16

noted above, there are questions of fact as to which forum's law applies to this action. Second, there are issues of fact as to the enforceability of the retainer agreement, whether Plaintiff's bills accurately reflect the work performed by Plaintiff and his law firm, and the reasonableness of Plaintiff's fee. *See Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 67 (2d Cir. 2000) ("Fee arrangements between an attorney and [a] client are scrutinized with particular care and an attorney who has drafted a retainer agreement ordinarily has the burden of showing that the contract was fair, reasonable, and fully known and understood by the client."). In this regard, Plaintiff has not submitted contemporaneous time records in support of his application; instead he submits billing sheets from June 2012 to June 2013. These billing sheets list the initials of the attorneys who performed the service; the date on which the service was performed; a brief description of the work performed; and the time expended. DE 282-12 Ex. 8. Other than "MK," which presumably is the Plaintiff Michael Kimm, there is no information as to the identities of the other billers or their credentials and experience. Moreover, there are no billing records at all with regard to the supplemental $22,300 Plaintiff seeks for work he inadvertently omitted from his bills.

Similarly, no information is provided to support the reasonableness of associate billing. Although the retainer provided that associates would be billed out at $175-$250 per hour, Plaintiff states that he ultimately billed all associate time at $250 per hour due to the alleged "level of difficulty and overall time and efforts expended for the clients." DE 28-12 ¶ 10. However, no information is provided as to the identities of these associates or why the work they performed justifies this higher fee.

17

Moreover, to the extent Plaintiff argues that summary judgment should be granted because Defendant failed to raise timely objections to Plaintiff's bills, there is at least some evidence in the record indicating that Defendant in fact objected: an email from Plaintiff to Defendant wherein Plaintiff states that Defendant's "disputes are complex and time-consuming" and that Plaintiff had "reviewed and re-reviewed the billing statements [and] deleted and removed many entries and trimmed the statements."  DE 29-8 Ex. H.

Lastly, the Court notes that no discovery has been taken in this case.  Although Defendant's opposition to Plaintiff's motion for summary judgment is wanting, Defendant should be afforded the opportunity to discover information relevant to his defense.  Accordingly, the Court respectfully recommends that Plaintiff's motion for summary judgment be denied at this time.

## CONCLUSION

The Court respectfully recommends that Defendant's motions to dismiss and for sanctions be denied.  The Court further recommends that Plaintiff's motion for summary judgment be denied.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served by the Court on all parties.  Any objections to this Report and Recommendation must be electronically filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days.  Failure to file objections within this period waives the right to appeal the District Court's Order.  *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis,*

18

*Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchant's Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:  Central Islip, New York  **SO ORDERED:**
       February 3, 2016

                                                _____/s_____
                                                ARLENE R. LINDSAY
                                                United States Magistrate Judge